<u>**EXHIBIT A to MOTION FOR LEAVE TO AMEND**</u>

**IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **TRICIA HIMEBAUGH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **C.A. NO.: 3:24-CV-00197** |
| | § | |
| **GALVESTON COLLEGE,** | § | |
| | § | |
| *Defendant.* | § | |

<u>**SECOND AMENDED COMPLAINT**</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Tricia Himebaugh ("Plaintiff") files this, her Second Amended Complaint complaining of Defendant Galveston College ("Defendant" or "the College") and respectfully states to this Honorable Court the following:

**I. <u>Jurisdiction</u>**

1.    This Court has subject matter jurisdiction pursuant to 42 U.S.C. 2000e-5 and  28 U.S.C. §1331 authorizing Federal Question Jurisdiction. This civil action is brought under gender, disability and

1

retaliation discrimination prohibited under the Civil Rights Act of 1964, as amended, and 42 U.S.C. §2000e et seq., as amended in 1991; the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12111-12117.

## II.  Venue

2.    Venue is proper in this District because the corporate defendant has significant contacts with the district, the plaintiff resides within this district, a substantial part of the events giving rise to Plaintiff's claims against Defendant occurred in this District pursuant to 28 U.S.C. §1391 (b) (2) and in Galveston County, Texas.

## III.  Parties

3.    Plaintiff Tricia Himebaugh is an adult woman who is a resident of Galveston County, Texas.

4.    Defendant Galveston College is a domestic non-profit corporation organized under the laws of the State of Texas. Defendant is physically located in the Southern District of Texas, including its principal place of business which is located in Galveston County, Texas. Defendant is being served with a copy of this pleading by serving its attorney-in-charge: Clay T. Grover of Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200, Houston, Texas, 77057

at cgrover@rmgllp.com after this pleading has been electronically filed with the Honorable Clerk of this Court by using CM/ECF.

### IV.  Exhaustion of Administrative Remedies

5.      Prior to filing this lawsuit, Plaintiff satisfied all conditions precedent by filing a timely complaint with the Equal Employment Opportunity Commission (EEOC).

6.      Plaintiff filed this lawsuit within 90-days of receiving a Right-To-Sue letter from the EEOC.

7.      Plaintiff filed her complaint of employment discrimination, asserting unlawful employment discrimination by Defendant on or about November 28, 2023.

8.      Upon receiving Plaintiff's complaint against Defendant with the period allowed by Law, the EEOC assigned it EEOC Charge Number 460-2-23-06116.

9.      Plaintiff received a Notice of Right To Sue letter dated March 27, 2024 notifying her of her right to bring this lawsuit within 90 days of her receipt of the letter.

### V.  Claim for Relief Short Statement

10.      Defendant discriminated against Plaintiff on the basis of her female sex, disability and religion, violated her FMLA right to keep

her job and retaliated against her and her job was terminated for exercising her FMLA rights. Defendant also mischaracterized Plaintiff as an exempt employee and failed to pay her overtime and not given comp time for working more than her "allot time." She was discriminated on the basis of her sex as to compensation, recognition and advancement. She was required to use sick time when working from home and Defendant failed to reimburse her for proper and authorized expenses. Plaintiff seeks an award of compensatory and punitive damages.

## VI. <u>Facts</u>

11.   In approximately March of 2018, Defendant hired Plaintiff to be its

Digital Communications and Web Services Manager (Web Manager), a full-time job In which Plaintiff, utilizing her education, training and experience, managed Defendant's website, online marketing, social media activity to enhance and promote Defendant's educational programs activities and online presence.

12. From the start of her work at the College in March of 2018, Plaintiff,

and other women employees were subjected to disparate treatment in the terms and conditions of employment. Females were discriminated on the basis of compensation, recognition and advancement.

13) As a further example of Defendant's discriminatory sexual favoritism, Plaintiff and other female employees were not given stipends for using their own laptops and cell phones for work but male employers were given such stipends. This constitutes discrimination on the basis of sex as to compensation and privileges.

a)    Plaintiff's required job duties included managing, building and improving the College's website, creating content for the College's website, and managing Defendant's text messaging applications.

b)    The use of a cell phone, laptop and/or desktop computer were essential tools of Plaintiff's job particularly during the pandemic shutdown.

c)    From being hired in March of 2018 until September of 2022, Plaintiff was required to use her own personal cellphone and laptop computer to perform the tasks of her job at her own expense and without reimbursement while male employees of the College

were provided a stiped or additional pay to cover the costs of private cell phone and laptop computer use that cost Plaintiff between approximately $300.00 (Three Hundred Dollars) to $400 (Four Hundred Dollars) per month. During this period of time, Plaintiff states upon Information and Belief that male employees were receiving a monthly stiped to compensate them for the regular monthly cost of using their personal cell phone and laptop and other computer equipment.

14)    Plaintiff' is a Jehovah's Witness who strongly identifies with and practices her religious faith. As a Jehovah's Witness, Plaintiff's religious principles differ from other Christian-based faiths.  Because of their religious beliefs, Jehovah's Witnesses do not accept blood transfusions, do not celebrate birthdays and do not celebrate Christmas and Easter. After being hired by Defendant in March of 2018, Plaintiff experienced discrimination because of her chosen religious faith as a Jehovah's Witness. After being hired in March of 2018, Plaintiff was introduced by Dr. Geisu Springer Lewis, part of the College's leadership team, to other College employees by saying: "This is Trish. She's a Jehovah's Witness."

15)     Plaintiff's religious preference and personal religious belief in no way affected her ability to perform her job duties as a Web Services Manager. By injecting Plaintiff's personal religious identity into routine introductions, Dr. Lewis, an administrator of the College, subjected Plaintiff to improper scrutiny and characterization for her personal religious practices and beliefs causing her embarrassment, self-consciousness and shame.

Thus, from early in her employment at the College, Plaintiff was identified as a Jehovah's Witness by her superiors. They did not introduce their other employees with a qualification regarding their religion.

16)     Prior to the College's Christmas holiday party in approximately December of 2022, Edgar Chrnko Salas, Defendant's Director of Marketing and Communication, and Plaintiff's supervisor, sharply questioned Plaintiff as to whether and why she was not attending that year's "voluntary" Christmas party and urged her to attend it despite her explanation to him of her personal religious beliefs of not celebrating Christmas as a practicing Jehovah's Witness. This caused Plaintiff to feel that she

was being "singled out" for undue attention due to her personal religious beliefs.

17)    At the College's Christmas-Holiday Party that took place in December of 2022, Edgar Chrmko Salas on behalf of the College, a public institution, hired a comedienne to entertain the employees. She made untoward, vulgar and sexist jokes about women with traditional values. The comedienne made one or more jokes about the fact that women experience menopause. The comedienne also mocked women who adhere to traditional relationships between husbands and wives. Because of her religious beliefs as a Jehovah's Witness, Plaintiff did not attend this party. But, following the party, Defendant's women employees, including Plaintiff, experienced shame, embarrassment and a realization that their chosen traditional family values were ridiculed as the management-chosen "entertainment" for a party paid for and sponsored by Defendant.

18)    Plaintiff states upon information and belief that Defendant's Marketing Director Edgar Chrnko Salas knowingly hired this comedienne whose repertoire was known to ridicule heterosexual women adhering to traditional family values. As a

result of Defendant's sponsoring this comedienne, Plaintiff and other similarly-situated women who worked at the College felt embarrassment and shame because they were known to have traditional values, marriages and families.

19) Plaintiff states upon Information and Belief that Defendant's President, Dr. Myles Shelton, also approved the hiring of the comedienne who was known to make offensive jokes that would foreseeably embarrass Plaintiff and other women who adhered to traditional family values of marriage between a men and women, practicing traditional religious beliefs.

20) During Plaintiff's employment with Defendant, Defendant granted more favorable treatment regarding professional recognition and promotions based on employees' sex.

21) While employed by the College, in approximately the Summer of 2022, the position of interim Director of Marketing & Communications became vacant. Despite being qualified through her education, training and experience, Plaintiff, and other women, were not afforded an opportunity to apply and be considered for this position. Upon inquiry, Defendant gave Plaintiff a pretextual excuse

that she could not be considered for the promotion because it would preclude her from being considered for other positions.

22)  As another example of discrimination, on or about January 26, 2023, the College asked Plaintiff and other College staff to attend the Legislative Reception for Community College Day. At the reception, the College's President, Dr. Myles Shelton, referred to Plaintiff and demonstrated his lack of respect for Plaintiff's work ethic and accomplishments. As Web Services Manager, Plaintiff built a website for the College over the course of her employment, that had a value of approximately $500,000.00 (Five Hundred Thousand Dollars) that was successful in attracting students to apply to the College. Dr. Shelton had personal knowledge of the value of Plaintiff's work that benefited the College.

23)  Despite his knowledge of the extent to which Plaintiff's work as the College's Web Services Manager enhanced the College's value and public presence in Galveston County, Texas, Dr. Shelton demeaned Plaintiff when introducing her to other college presidents. Dr. Shelton introduced Edgar Salas "as our Marketing Director." Then, Dr. Shelton introduced Plaintiff as "Trish with a fancy title."

24) On other occasions, Plaintiff was embarrassed by being subjected to uninvited scrutiny and leering due to her physical characteristics as a woman. Plaintiff experienced leering at her breasts by the Marketing Director Edgar Salas (Chrnko). He would position himself uncomfortably close behind Plaintiff while she was working at her desk and pretend to observe her work. Plaintiff discussed the unwanted scrutiny from Salas with another woman coworker who confirmed that she had observed Salas' leering at Plaintiff.

25) Defendant gave male employees far more professional recognition and promotions to male employees than it did to equally qualified and hard-working female employees such as Plaintiff.

26)    Defendant's Director of Marketing and Communication, Edgar Chrnko Salas, has shown and tolerated sex discrimination    and harassment since the day he started at Galveston College. He was  responsible for hiring the offensive c comedienne  to entertain at Defendant's Christmas party who made sexist, discriminatory and bigoted jokes.

27)    Defendant's customary practice of sex discrimination and retaliation is rampant because the majority of its administrative employees are single mothers with few other local job opportunities

in the same city.

## VII. Disability Discrimination

28)     This is an action to redress Defendant's discrimination

against Plaintiff because of her disability (hypertension and other

stress conditions), in violation of Title I of the American with

Disabilities Act of 1990, 42 U.S.C. Section 12101 *et seq*.(hereinafter

"ADA"). Plaintiff was prevented by Defendant from using

accommodations that she arranged for, that allowed her to

adequately perform all of the essential functions of her job; and was

discharged by Defendant in 2023, because it refused to consider

reasonable accommodations for Plaintiff.

29)     Plaintiff seeks reinstatement to her position with full back

pay and fringe benefits, as well as compensatory damages for

humiliation and pain and suffering. She also seeks punitive damages

for the wanton and intentional violation of her rights by Defendant.

Defendant discriminated against Plaintiff based on her disability by

not granting her request for reasonable accommodations.

30)     Jurisdiction is conferred on this Court by 28 U.S.C.

Section 1331 and 42 U.S.C. Sections 2000e-5 (f)(1)and 12117.

The request by Plaintiff for declaratory and injunctive relief is

authorized by 28 U.S.C Sections 2201and 2202.

31)    Plaintiff is an individual with a disability. During her employment with Defendant, Plaintiff developed severe hypertension and other severe stress conditions. In 2023, Plaintiff had a hypertension crisis and was forced to apply for FMLA leave. Defendant terminated Plaintiff's FMLA leave prematurely and her employment because she attended her son's graduation.

32)   Plaintiff's treating physician ordered her to not return to work and later to work only from home to avoid the work stress that was exacerbating her hypertension. Defendant refused this request although she had been fully performing her same job responsibilities remotely during the pandemic.

33) Defendant discriminated against Plaintiff by forcing her to use sick time for Covid-19 when other employees were not required to use personal sick time. Shortly afterwards, others were not required to use their sick time.

34) On June 26, 2023, Dr. Mary Jan Lantz, , Ed.D. Defendant's Director of Human Resources and Risk Management Title IX

Coordinator, emailed Plaintiff on behalf of Defendant:

> Your doctor has noted that you are unable to attend
> in-person meetings. Since your office is behind a
> locked door environment, with limited access to the
> public, we can accommodate this request by allowing
> you to work in your office, with your door closed. You
> may attend meetings, and trainings, via zoom or
> teams as well as accomplish all your website duties.

> Your doctor has also noted you need to avoid social
> media creation at events. A large portion of your job
> duties include social media and in- person events.
> Please note your job description does state,

> "Manage pre-production, production, and post-
> production for a variety of multimedia projects,
> including live video streaming, virtual tours, edits, for
> social media, website, presentations and events" and
> "Requires the kind of teamwork, supervision, and
> personal interaction, which cannot be had in a home
> office situation; there-
> fore, regular and predictable on-site attendance is a
> job requirement." Please explain the reasonable
> accommodation you are requesting that would
> allow you to accomplish this essential functions of
> your job."

Plaintiff's June 27, 2023 response to Dr. Lantz stated:

> Thank you for your consideration to my ADA request
> based on my doctor's recommendation and my
> current health situation. I am trying to comply with my
> doctor's recommendation to get better, not worsen
> my condition. She has laid out all the actions and
> precautions necessary regarding my health condition
> to ensure I return to work healthy.
> Unfortunately, your suggested solution is not a reasonable
> accommodation for me at this time nor in accordance with my
> doctor's

recommendations as of June 22, 2023.

On June 28, 2023, Plaintiff received the following

email response from Dr. Lantz:

Good Afternoon Trish, You reported to your
supervisor on Monday 5/22/2023 that you were
attending your son's graduation. On Monday
5/29/2023 you reported to your supervisor that your
son was in swoop camp in Tyler and you were driving
up there for parents' weekend. On Monday 6/5/2023
you reported that you were with your son in Tyler for
orientation week and parents' day. However, your
doctor has stated that you need to avoid social
events. Since you have disclosed that you have been
successfully attending social events while you are on
leave for your medical condition, our accommodation
for you to work in your office behind a locked door
environment, with limited access to the public, and
attending meetings, and trainings, via zoom or teams
as well as accomplish all your website duties is a
reasonable accommodation. You have not accepted
our offer of this reasonable accommodation. As
stated below, a large portion of your job duties
includes social media and in- person events which
you have been able to do outside of work. We do
want to offer reasonable accommodations for you;
however, it is unclear what accommodation we could
offer that would allow to perform your job duties. Per
28 C.F.R. §35.130(b)(7) a public entity is not required
to offer accommodations that would alter an
approved job description. Per the ADA if an
employee is unable to perform their job duties, with
reasonable accommodations, they are no longer
qualified for their position. You have been off work for
over 13 weeks now and a return-to-work date of
August 22nd is not reasonable. Please provide a
reasonable return to work date by 6/29/23. If you are
stating you can no longer perform your job duties,

with reasonable accommodations, and are not providing the College with a reasonable return-to-work date then the College reserves the right to terminate your employment.

On **June 29**, 2023, Plaintiff received the following email from Dr.

Lantz:

 I was really hoping to hear from you today. Please understand, since your FMLA has ended last week you are no longer on an approved leave from the College. Per College policy: **Unexcused Absences** *Except in an emergency, an unexcused absence occurs when an employee fails to notify the supervisor of an absence prior to the scheduled starting time, and/ or permission is not granted by the supervisor. Excessive unexcused absences may result in disciplinary action. Failure to provide notification of absence from work for three (3) workdays, except in an emergency, shall be considered a voluntary termination of employment.* If we haven't heard back from you by 6pm July 6th we will consider that you have voluntarily terminated your employment with the College.

**On July 17**, 2023, Plaintiff received the following email from Dr. Lantz

Trish, I extended the timeline and waited three weeks for your response in sincere hopes you would contact me so we could find an accommodation that would be acceptable to your doctor. If you no longer want to continue the inter-active process please let me know. Joyce has also sent you notices about your insurance premium payments that are past due for June

and due for July. Since you have ceased all communications with us I can only assume you are resigning from your position. Please contact me by July 20, and please understand this is the last extension I can give.

**On July 20**, 2023, Plaintiff received the

following email from Dr. Lantz:

Joyce told me you have been responding about your insurance payments through your personal email address. So I wanted to make sure you received a copy of my email below. On Monday we will process your resignation unless you let me know different.

Thank you, and I truly do wish you all the very best.

**On July 20**, 2023, Plaintiff's response to Dr. Mary Jan Lantz was: Dr. Lantz, thank you for your email. After my request for a reasonable ADA accommodation the response I read and understood that you were only offering a resolution for me to come in and work from my office. When I requested FMLA on March 28, 2023, I expressed my situation to why I needed time off to Dr. Shelton, which was approved and I stated I was going to spend time with my only child since he was going to college. And it was approved by Dr. Shelton, at that time my Dr. recommended that I spend time with my loved ones to get the healing I needed. As well as deal with the pain from losing my father and mother within the past few years and I didn't have the opportunity to take the time necessary due to Carol quitting and Dr. Patterson calling me back to the office days after I laid my mother to rest. Then when I returned I had an abundant amount of pressure to complete the web site and pick up the slack and workload that was required for not having a Director and working on the website all by myself along with all my other responsibilities. On June 22,

2023 is when I saw my Dr. because you stated my FMLA had expired and due to my husband being admitted to the hospital on June 21, 2023 was an emergency and when he was released he needed continued treatment and care. Which has caused additional emotional stressors due to my already chronic stress and emotional distress emotionally which was expressed to my supervisor. Therefore my doctor modified my return back to work to an additional two months but from home to work on all the website edits that had been piling up since the day I left on March 28, 2023. Which by my understanding my ADA accommodation request was denied without additional interactive process because it was not stated in the email. Which was hard to understand because I have done my very best at Galveston College for the entire 5 years of my employment.

. . .

With my current situation I was not able to handle more stress by the unreasonable demand of my only option of returning immediately to work from my office when I have worked from home on multiple occasions while sick and claiming sick leave per my supervisor's request and all throughout covid with-out any issues or decline in my work. My therapist stated that the health of my husband was a stress trigger for me and it was. I couldn't leave him with his current emergency situation because I am his only caregiver. This is why my Dr stated that my condition has not fully improved and re-quired me to take it easy and start off slowly and not go to social events be-cause it would cause additional stress. Therefore, if you only gave me one option and did not express to me that this was still an interactive process how was I supposed to assume that? Therefore, why would I continue to check my work email, you had my phone number and personal email if you had more information to share with me and Joyce stating I would be receiving Cobra information from the state which

indicates termination. I am still having headaches and other health issues but am willing to work from home until shortly after the Fall semester begins and hope to be fully back to normal mentally and emotionally and physically for years to come. Sincerely, Tricia Himebaugh

**July 24** - Dr. Mary Jan Lantz response was: Trish, I emailed you on June 26th regarding your request for an ADA accommodation. Galveston College continues to be involved in the interactive process, but you have failed to timely engage or respond to my emails. I followed up with you on June 29th, July 17th and July 20th. You finally responded on July 20th, but you have failed to explain how the reasonable accommodation will allow you to accomplish your essential job functions. Galveston College is willing to continue the interactive process on your request for a reasonable accommodation.

In reading your doctor's answers on the Essential Job Functions Check-list & Accommodations, it appears your doctor is saying that you cannot attend in- person trainings or meetings, but you are able to attend remote meetings. The basis of the accommodation appears you cannot meet with other people in- person because of your disability. We offered a reasonable accommodation to allow you to avoid in-person meetings by attending remote meetings from your secluded office with a closed door. Please explain how this is not a reasonable accommodation. Your email states that you are unable to return to work because you are your husband's only caregiver. You have not made a request for FMLA leave to care for your husband. Furthermore, your FMLA time is exhausted. You are not eligible for more FMLA time until March 28, 2024. Your needs to provide caregiving to your husband cannot be a basis for your continued absences or a request to work from home. Your doctor has noted you need to avoid social media creation at events. A large portion of your job duties include social media and in-person events. Please note your job description does state, "Manage pre- production, production, and post-production for a variety of multimedia

projects, including live video streaming, virtual tours, edits, for social media, website, presentations and events" and "Requires the kind of teamwork, supervision, and personal interaction, that cannot be had in a home office situation; therefore, regular and predictable on-site attendance is a job requirement." Again, I ask that you please explain the reasonable accommodation you are requesting that would allow you to accomplish this essential functions of your job. Please respond by Wednesday, July 26th at 5pm. If we do not reach a resolution of the interactive process by Friday, July 28th, Galveston College will consider you to be voluntarily resigned from your employment. Thank you, Mary Jan Lantz, Ed.D.

**July 25** – Plaintiff's response to Dr. Lantz was : Thank you for your email.
Based on the paperwork I received yesterday from the state it stated I was terminated and Cobra began as of July 1, 2023. Therefore, I will continue to comply with my physician's advice regarding my medical care.

**July 25** - Dr. Lantz's response was : Good Morning Trish, Your health insurance was terminated by the State for non-payment. _You are still employed by the College_. Are you saying you on longer wanting to continue the interactive process with us? Please let me know. (emphasis added).

**July 26** - Plaintiff's response to Dr. Lantz was: Does this mean I can start working from home on Monday morning?

**July 26** - Dr. Lantz's response was : Good Morning Trish, We offered a reasonable accommodation to allow you to avoid in-person meetings by attending remote meetings from your secluded office with a closed door. Since your job description states, "Requires the kind of teamwork, supervision, and personal interaction, that cannot be had in a home office situation" working from home would not allow you to "Manage pre-production,

production, and post-production for a variety of multimedia projects, including live video streaming, virtual tours, edits, for social media, website, presentations and events" which is an essential function on your job description. Please explain the reasonable accommodation you are requesting that would allow you to accomplish this essential functions of your job since working from home would not.

**July 26** - Plaintiff's response to Dr. Mary Jan Lantz: Thank you for the information but since you will not comply with my doctor's recommendation nor has she given me a release to return back in person. I will not be returning. This is my official notice. Trish

**July 31** - Plaintiff received the following message: "Good morning, Trish. I'm sorry to hear that you will be leaving us. Dr. Lantz let me know that you decided to resign from GC.I totally understand your decision at this time is the best for you and your family. It was a pleasure working with you and I want to thank you for all the work you have done for the college. Please let me know when you would like to come by and pick up your personal items, and return your college equipment: laptop, keys and ID, as well as change any/all passwords or remove and update admins, etc. from social media and any other digital/online accounts you had access to or managed for the college. We will miss you and I wish you and your family all the best.

Regards,
Ed Chrnko Salas

**July 31** – Plaintiff's response to Ed Chrnko Salas: Ed, Due to GC not complying with my reasonable accommodation per my Dr request for ADA to work from home until August 22 pushed me out of work.

I do not have any equipment to return, I have never had a laptop and Sandi has the iPad and the password which is the same as the cell phone. I have a cold and fever will send Kaz in to drop off my

key and ID to Brenda. Please have my ear-buds,
from my desk drawer and 5-year anniversary gift
and personal photos and photo of Kaz ready by
12:30 today. I do not need anything else.

Also, I do not have access to any social media
accounts they were removed from my personal
devices when I got the GC social media phone.
Carol had full super admin and added me. Sandi can
help you. All passwords are on the main document
that I sent you when you started in the one drive.

Thank you, Trish

**July 31** - Ed Chrnko Salas's response to me: Trish,
Thanks for your reply. I have your personal items
ready whenever Kaz stops by. If I'm not available, I
will leave them on the table next to Sandi's office
with Kaz's name on it.

Regards,

Ed Chrnko Salas

## VIII.  <u>Plaintiff suffered employment discrimination from</u>

### <u>working in a Hostile Workplace Environment</u>

35.   As demonstrated above, Plaintiff suffered wrongful

employment discrimination with respect to the terms, conditions,

and/or privileges of her employment with Defendant.

36.   Specifically, Title VII, §703 (a), known as the anti-

discrimination provision is not limited to ultimate employment

decisions. Rather, Defendant subjected Plaintiff to disparate

treatment with regard to the *terms, conditions, and/or privileges of*

*her employment* including but not limited to the following facts:

- Requiring Plaintiff to pay for the cost of equipment essential to performing the tasks of her employment for more than four years of her employment with Defendant. Plaintiff, a woman, and other women, were not paid a stipend for use of their cell phones and laptop and/or desktop computers, Equivalent male employees were paid a stipend. Plaintiff states upon Information and Belief that by failing to treat her equally to this "term" and "condition" of employment she suffered financially in the approximate amount of $4,500.00 (Four Thousand Five Hundred Dollars) per annum for a period of approximately four years and thus sustained financial damages in an approximate minimum amount of $18,000.00

  before the College began paying her a stipend effective September of 2022.

- By introductions of her by a College administrator as a Jehovah's Witness which discriminated and called undue attention to her causing apprehension and anxiety because of her personal decision, faith and belief in her religion which she cherished and honored.

- By sponsoring a professional comedienne at the College's holiday party who openly ridiculed, with prior approval of the College's administrators, of Plaintiff's traditional family values lifestyle and made crude, demeaning and sexually discriminatory jokes – later the concern of Plaintiff and other women employees of the College, were the subject of ridicule connoting that Plaintiff's personal beliefs and practices were somehow out-of-step with the College's workplace culture and environment.

- By a managerial employee, as set out above, castigating Plaintiff as a Jehovah's Witness noting that she did not celebrate Christmas and didn't fit in the College's workplace environment by abiding by her religious beliefs and not attending the 2022 Christmas party.

- By demeaning Plaintiff's competence and achievements as the College's successful Web Services Manager by introducing her "as Trish with a fancy title" to other college presidents. In

contrast, the College's President affirmed the value of Edgar Salas, a male employee, by respectfully introducing him by his correct job description.

## IX. VIOLATIONS ALLEGED

37)     Defendant is liable for Failing to take corrective action for mistreatment of the plaintiff when such treatment occurred.

38)     On information and belief, Defendant followed and is following a policy and practice of discrimination against the plaintiff because of her disability in violation of 42 U.S.C. Section 2000e *et seq* and retaliation for exercising her rights under the FMLA. The discriminatory practices and policies include, but are not limited to the following:

39)     The effect of the policies and practices pursued by the defendant as alleged above has been and continues to limit, classify, and discriminate against the plaintiff in ways which jeopardize her job and deprive her of employment opportunities and otherwise adversely affects her status as an employee

because of her sex in violation of 42 U.S.C. Section 2000e et

seq.

40)      As a further result of defendant's above-stated actions,

the plaintiff has been and is being deprived of income in the form

of wages and prospective retirement benefits, social security and

other benefits due to her as an employee solely because of her

sex in a sum to be proven at trial.

41)      Defendant's refusal to provide or allow reasonable

accommodations to Plaintiff's disability such that she could

continue to fulfill the essential functions of her job, its termination

of her FMLA leave on such spurious and heartless grounds as

attending her only child's graduation ceremony  and its discharge

of her because of her disability, constitutes discrimination in

violation of the ADA and FMLA.

42)      Defendant's refusal to allow Plaintiff  to utilize

accommodations to her disability  that she provided at her

expense, its refusal to meaningfully explore reasonable

accommodations for her disability, its placing of her on

involuntary leave, its requirement that she could only return to

work if she worked in her locked office, and Defendant's

constructive discharge of Plaintiff constitutes gross, wanton, reckless, and/or intentional violations of her rights under the ADA and FMLA, entitling her to punitive damages.

43)     Defendant has unlawfully discriminated against the plaintiff by failing to remedy discriminatory practices of its supervisory personnel; and otherwise discriminating and retaliating against Plaintiff on the basis of her disability and her exercise of her FMLA rights.

44)     Defendant has acted maliciously or with reckless indifference to Plaintiff's rights under the Civil Rights Act of 1964 as amended.

### IX. Family and Medical Leave Act

45)     The preceding allegations are incorporated by reference herein as if fully set forth.

46)     Pleading in the alternative and without waiving her right to not be discriminated against for her disability, in 2023, Plaintiff suffered from a serious health condition as defined by the Family and Medical Leave Act ("FMLA"). 29 USC Sec. 261(11). This condition included hypertension, anxiety attacks and other stress related conditions that satisfy the definition of

serious health condition under the FMLA. This serious health condition interfered with Plaintiff's ability to perform her duties and made it impossible for her to perform the function of her position with Defendant without reasonable accommodations which they refused to grant.

47)    Plaintiff requested and was granted leave for approximately 13 weeks. Due to the nature of the condition, 30 days notice for the requested leave was not practicable.

48)    Prior to requesting the leave, Plaintiff had no knowledge of her rights under the FMLA and has no knowledge of any such information being posted at her place of employment or provided to her in any employee handbook or other publication.

49)    That, on information and belief, the Defendant has failed in its obligation under 29 C.F.R. Secs. 825.301 et seq to provide posted notices and other materials to its employees regarding their rights under the FMLA.

50)    The Plaintiff's request for leave was initially granted and prematurely terminated by the Defendant based on pretextual reasons, i.e. attending her only son's graduation ceremony.

51)    As a result of Plaintiff's absence from work for the purpose of seeking treatment for a serious medical condition, Plaintiff was constructively discharged from her employment by Defendant.

52)    As a result of her termination by Defendant, Plaintiff suffered significant financial loss and loss of benefits of her employment, including health insurance for herself and her family.

53)    These acts were a willful violation of the FMLA and entitle Plaintiff to recover damages as provided by 29 USC Sec. 2617.

WHEREFORE, Plaintiff respectfully prays this Court to:

a. Accept jurisdiction of this case.

b. Grant Plaintiff a trial by jury on all issues so triable.

c. Declare that Plaintiff has suffered acts of discrimination at the hands of Defendant based on her disability and sex.

d. Order Defendant to make whole the Plaintiff by providing appropriate back pay and reimbursement for lost pension, social security and other benefits, including all fringe benefits to which she would have been entitled had her employment with Defendant not been interrupted. Alternatively, Plaintiff seeks recovery of liquidated damages in an amount equal to all lost wages, salary, employment benefits, and other compensation lost as a result of Defendant's

wrongful conduct in the amount to be proven at trial. Such damages

shall be in an amount in excess of $10,000, the exact amount to be

determined at trial, plus prejudgment interest, in an amount to be

shown at trial.

e. Award Plaintiff compensatory damages for the humiliation, damage

to her reputation, mental and emotional distress, and pain and

suffering that she has experienced and endured as a result of the

discriminatory actions of Defendant towards her. Such damages shall

be in an amount in excess of $10,000, the exact amount to

determined at trial.

f. Grant Plaintiff punitive damages against Defendant. Such

damages shall be in an amount in excess of$10,000, the exact

amount to be determined at trial.

g. Grant Plaintiff pre-judgment and post-judgment interest on all

damages awarded, to the maximum extent allowed by law.

h. Grant Plaintiff her reasonable costs and attorney's fees. Order

defendant to pay plaintiff punitive and compensatory damages in

an amount in excess of $100,000.

i. Order the defendant to be taxed with the cost of this action, including

    expert witness fees and reasonable attorney's fees for the plaintiff;

j. Retain jurisdiction over this action to assure compliance with the orders of this Court and with 42 U.S.C. Section 2000e and require defendant to file such reports as the Court may deem necessary.

k. Declare that Plaintiff is not an employee exempt form overtime under the Fair Labor Act and to order compensation for not complying with said overtime requirements.

(il) Try all issues of fact to a jury; and

(m) Grant such additional relief as to the Court may seem just and proper.

Respectfully submitted,

COWAN LAW FIRM

BY: /$/ Finis Cowan
SBOT 04912100
One Greenway Plaza Suite 100
Houston, Texas 77046
PH:   832. 341 4599
Fax:  713 561 3692
Email: Finis@finiscowan.com
E-Service: Service@TexasDebtDefense.com

Certificate of Service

I certify that on May 1, 2025, I served this instrument on Defendant's counsel via email or efiling through the PACER system.

BY: /$/ Finis Cowan